NOT FOR PUBLICATION                                    (Docs. No. 14, 15)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

———————————————————  :
                                                      :
Miguel PEREZ,                                         :
                                                      :
                                    Plaintiff,        :        Civil No. 14-7473 (RBK/JS)
                                                      :
                        v.                            :        **Opinion**
                                                      :
CAMDEN MUNICPAL COURT, et al.,                        :
                                                      :
                                Defendant(s).  :
———————————————————  :

**KUGLER**, United States District Judge:

        This matter comes before the Court on Plaintiff Miguel Perez's ("Plaintiff") Complaint

against Defendants Camden Municipal Court and the City of Camden ("Defendants") asserting

violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.,

Rehabilitation Act of 1973, 29 U.S.C. § 794, and New Jersey Law Against Discrimination

("NJLAD"), N.J. Stat. Ann. 10:5-1 et seq. (Doc. No. 1). Currently before the Court is

Defendants' Motion for Summary Judgment (Doc. No. 14) and Plaintiff's Motion for Partial

Summary Judgment (Doc. No. 15). For the reasons expressed below, Defendants' Motion is

**GRANTED IN PART** and Plaintiff's Motion is **GRANTED**.

## I.      BACKGROUND

### A.      Factual Background

Plaintiff has profound deafness and requires a sign language interpreter to communicate

and understand spoken words. Pl.'s Statement of Undisputed Material Facts ("Pl.'s SMF") ¶ 1.[1] Plaintiff cannot speak intelligibly, read lips, or read written English beyond a second grade level.[2] *Id.* ¶ 2. In 2007, Plaintiff was convicted of driving under the influence and ordered to complete an Intoxicated Driver Resource Center ("IDRC") program. *Id.* ¶ 3. However, Plaintiff failed to complete the program and the reason why is a subject of dispute between the parties. Plaintiff alleges that the IDRC failed to provide him an interpreter, *id.* ¶ 13, and Defendants assert that Plaintiff decided not to attend despite accommodations that the IDRC offered, Def.'s Mot. for Summ. J. ("Def.'s MSJ") Exs. B, D.[3]

Because Plaintiff failed to complete the program, he was summoned to appear in Camden Municipal Court ("CMC") in July 2013. Pl.'s SMF ¶ 3. Prior to the scheduled date, Plaintiff called the CMC to notify it of his hearing impairment and request an interpreter. *Id.* ¶ 7. When Plaintiff arrived at the court on July 22, 2013, he was not provided an interpreter and waited several hours in confusion. *Id.* ¶ 8. After five hours of waiting, Plaintiff appeared before Judge Steven Burkett who instructed someone to hand Plaintiff a piece of paper. *Id.* ¶¶ 8, 10. The paper stated that his hearing was rescheduled for August 8, 2013, and the Judge stated on the record that an interpreter would be needed at that time. *Id.* ¶¶ 10–11.

---

[1] To the extent the parties agree on particular facts, the Court will cite Plaintiff's SMF and Defendants' SMF in support. For disputed facts, the Court will rely on the record.

[2] Defendants dispute several factual assertions in Plaintiff's SMF by asserting legal arguments. Local Civil Rule 56.1, however, requires a party to dispute a material fact by citing to affidavits or other documents. Accordingly, this Court will deem any improperly disputed facts as undisputed for the purposes of the present Motions.

[3] The Court notes that Defendants repeatedly cite to exhibits without identifying page or paragraph numbers, including a deposition transcript that totals more than 60 pages. Such indefinite citations hamper the Court's responsibility to identify whether disputes of material fact exist, and the Court cautions that other courts in this District have disregarded facts that are not properly attributed to the record. *See, e.g.*, *Webster v. Dollar General, Inc.*, 2016 WL 3769748 (D.N.J. July 14, 2016).

Plaintiff returned to the CMC on August 8, 2013, but was again not provided an interpreter, which Judge Burkett explained was because of financial reasons. *Id.* ¶¶ 12, 14. Plaintiff's counsel, a public defender, asserted that Plaintiff had been unable to attend IDRC because he could not afford his own interpreter, but the Judge instructed Plaintiff to complete the program. *Id.* ¶ 13. The Judge stated that an interpreter would not be necessary at the next proceeding because Plaintiff could simply bring documentation showing attendance. *Id.* ¶ 15. During the hearing, Plaintiff could neither participate nor understand his attorney and Judge Burkett, and the only communication he received was cursory notes written by his lawyer. *Id.* ¶ 13. When Plaintiff returned to court on September 26, 2013, he could provide no documents showing completion of IDRC and there was no interpreter, so the matter was relisted for October 10, 2013. *Id.*

On October 10, 2013, two interpreters were present at court, and Judge Burkett noted that "Mr. Perez can understand fully what is going on today." *Id.* ¶ 18. When asked, Plaintiff stated that he had completed IDRC but still had no documentation stating as such, and the Judge instructed him to bring proof of compliance on October 24, 2013. *Id.* ¶ 20. In fact, Plaintiff had been mistaken about completing the program, and the IDRC requested a continuance of the October 24, 2013 hearing in order to determine how to accommodate Plaintiff's disability. *Id.* ¶¶ 20–21. When Plaintiff returned to the CMC on January 9, 2014 and April 10, 2014, there once again were no interpreters in court. *Id.* ¶¶ 22, 24. Upon being informed that the IDRC ultimately decided against providing an interpreter for the program, Judge Burkett stated it was the "IDRC['s] problem" and that he would call the center. *Id.* ¶¶ 23, 26. The Judge remarked, "I don't know all there is to know about the law in terms of people with disabilities but I think the government has to provide an individual with disabilities with the... [sic]." *Id.* ¶ 25. On May 22,

2014 and July 24, 2014, Plaintiff reappeared at the CMC but the proceedings were conducted without interpreters and involved wait times of several hours during which Plaintiff avers he was confused. *Id.* ¶¶ 28, 30. Out of eight court proceedings, Plaintiff was provided an interpreter for only one instance. *Id.* ¶ 31.

In July 2014, Plaintiff was finally able to complete the IDRC requirement because, as Plaintiff contends, he hired an attorney who persuaded the IDRC to provide him adequate accommodations. *Id.* ¶ 29; Perez Dep. at 33. Defendants, however, maintain that the IDRC had repeatedly offered Plaintiff other ways to participate but Plaintiff had refused those alternatives. Def.'s MSJ Ex. D.

### B.    Procedural History

Plaintiff filed a Complaint on December 2, 2014 (Doc. No. 1) alleging violations of the ADA, Rehabilitation Act, and NJLAD. Defendants filed an Answer on January 12, 2015 (Doc. No. 4). On April 29, 2016, Defendants filed the present Motion for Summary Judgment (Doc. No. 14). On the same day, Plaintiff filed the present Motion for Partial Summary Judgment on liability under the ADA, Rehabilitation Act, and NJLAD (Doc. No. 15).

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Az. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) ("Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"). In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact. *Anderson*, 477 U.S. at 248. Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor. *Id.* at 255; *Matsushita*, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment. *Anderson*, 477 U.S. at 256. The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Id.* at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

### A.    ADA

#### 1.    Liability

Plaintiff and Defendants both move for summary judgment as to liability under Title II of the ADA. Congress enacted the ADA in 1990 with the purpose of providing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). Title II of the ADA generally makes it unlawful for public entities to discriminate against individuals with disabilities in the provision of public services. *See* 42 U.S.C. §§ 12131–12134. To prove a prima facie case under Title II,

the plaintiff must show: "[1] he is a qualified individual with a disability; [2] that he was excluded from a service, program, or activity of a public entity; and [3] that he was excluded because of his disability." *Disability Rights New Jersey, Inc. v. Comm'r, New Jersey Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015) (internal quotations and citations omitted).

A disability is a physical or mental impairment that substantially limits a major life activity. 42 U.S.C. § 12102(1)–(2). In the instant matter, it is undisputed that Plaintiff is profoundly deaf and cannot communicate without a sign language interpreter. Thus, he is a qualified individual with a disability.

To show that the plaintiff was excluded from a service, program, or activity of a public entity, he can allege that the public entity failed to provide "appropriate auxiliary aids and services" where "necessary to afford an individual with a disability an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity." *Chisolm v. McManimon*, 275 F.3d 315, 325 (3d Cir. 2001) (citing 28 C.F.R. § 35.160(b)(1)).[4] In determining the appropriate auxiliary aids and services, the public entity should "give primary consideration to the requests of the individual with disabilities." *Chisolm*, 275 F.3d at 325 (citing 28 C.F.R. § 35.160(b)(2)). There is no dispute here that Defendants failed to provide an interpreter on seven occasions that Plaintiff appeared in court. Not providing access to the courts is an exclusion for which a plaintiff can recover under the ADA. *See Tennessee v. Lane*, 541 U.S. 509, 510 (2004).

Lastly, demonstrating that the individual was excluded because of his disability "does not require a failure-to-accommodate plaintiff to show that his injury was the result of purposeful discrimination." *Muhammad v. Court of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x

---

[4] Regulations promulgated by the Department of Justice are entitled to substantial deference "[b]ecause Title II was enacted with broad language and directed the Department of Justice to promulgate regulations." *Helen L. v. DiDario*, 46 F.3d 325, 331–32 (3d Cir. 1995).

759, 764 (3d Cir. 2012). The plaintiff need only show that "but for the failure to accommodate, he would not be deprived of the benefit he seeks." *Id.* Plaintiff here furnishes ample evidence that he would have been able to participate in and understand the hearings at the CMC had Defendants provided an interpreter. Therefore, Plaintiff has made out a prima facie case against Defendants under Title II of the ADA.

  Defendants respond with several arguments, none of which are successful. Defendants first contend that Plaintiff was not deprived of meaningful access to the court. It is undisputed that Plaintiff is profoundly deaf, cannot lip read, and reads written material at a second grade level; no reasonable trier of fact could conclude that the exchange of written notes would afford Plaintiff meaningful access to court proceedings. Next, Defendants attempt to argue that their responsibilities under the ADA are extinguished because Plaintiff was at fault for not attending IDRC. The Supreme Court, however, has characterized access to the courts as a "basic right," *Lane*, 541 U.S. at 523, and this Court is aware of no authority restricting the right based on a litigant's culpability. Such a holding would indeed contradict the fundamental purpose of guaranteeing access to the courts. Defendants also appear to assert that Judge Burkett acted "reasonably" towards Plaintiff during court proceedings, a point that does not bear on whether the CMC provided appropriate auxiliary aids and services. Lastly, Defendants' argument that Plaintiff furnishes no evidence regarding the reasonableness of their policies is off point — Plaintiff need not make any averments regarding Defendants' policies to prove a Title II violation. *See Soto v. City of Newark*, 72 F. Supp. 2d 489, 496 (D.N.J. 1999) (finding the city violated Title II absent any analysis of its policies). Because there are no genuine disputes of material fact and Defendants violated Title II as a matter of law, the Court grants Plaintiff partial summary judgment on liability.

2.      *Damages*

Defendants seek summary judgment on the issue of compensatory damages under the ADA. A plaintiff can recover damages under § 202 of the ADA only for intentional discrimination. *S.H.* ex rel. *Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013). A showing of deliberate indifference satisfies the intentional discrimination standard, and a plaintiff must prove: "(1) knowledge that a federally protected right is substantially likely to be violated . . . , and (2) failure to act despite that knowledge." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 269 (3d Cir. 2014) (citations omitted). The defendant must have acted with "deliberate choice, rather than negligence or bureaucratic inaction," but "a showing of personal ill will or animosity toward the disabled person" is not required. *Id.* (citations omitted).

Defendants argue that they did not act with deliberate indifference because Judge Burkett tried to help Plaintiff avoid jail time and avoid paying for an interpreter. The deliberate indifference standard, however, turns not on personal animus but on knowledge that a right is substantially likely to be violated and failure to act. Plaintiff here shows that Plaintiff informed the CMC of his disability and need for an interpreter prior to his first hearing, Judge Burkett saw Plaintiff on numerous occasions and acknowledged that Plaintiff could not understand or communicate in spoken word, and Judge Burkett knew the government has an obligation to provide accommodations to people with disabilities. Based on these facts, a reasonable trier of fact could find that Defendants acted with deliberate indifference. Defendants assert that Judge Burkett has judicial immunity, but judicial immunity only bars suit against a judicial officer.[5] *See*

---

[5] Defendants also reiterate that Plaintiff was at fault for not completing the IDRC program, at one point comparing Plaintiff's claim for disability discrimination to a person who burns himself with a lit match and sues the match manufacturer. Def.'s MSJ. This Court finds the analogy inapposite and the argument unavailing for the same reasons as above.

*Mireles v. Waco*, 502 U.S. 9, 11 (1991). As such, the Court denies Defendants' request for summary judgment on damages.

Defendants also move for summary judgment on Plaintiff's request for compensatory damages due to emotional distress based on a lack of supporting medical evidence. The Third Circuit has upheld a jury award for emotional damages under the ADA based on testimony from lay witnesses, *see Gagliardo v. Connaught Labs.*, Inc., 311 F.3d 565, 573–74 (3d Cir. 2002), so the Court will not dismiss Plaintiff's claim for compensatory damages from emotional distress.

### B.      Rehabilitation Act of 1973

#### 1.      Liability

Plaintiff and Defendants move for summary judgment as to liability under § 504 of the Rehabilitation Act. To state a claim for a violation of § 504 of the Rehabilitation Act, a plaintiff must show that: "(1) that he is a 'handicapped individual' under the Act, (2) that he is 'otherwise qualified' for the position sought, (3) that he was [excluded from participating in or denied the benefits of a program or activity] 'solely by reason of his handicap,' and (4) that the program or activity in question receives federal financial assistance." *Menkowitz v. Pottstown Mem'l Med. Ctr.*, 154 F.3d 113, 123 (3d Cir. 1998) (citations omitted); 29 U.S.C. § 794(a). The elements are the same as those for a violation of the ADA, minus the requirement that the program be provided by a "public entity" and with the requirements that the program receive federal financial assistance and the individual was discriminated against solely by reason of a disability. *See Helen L. v. DiDario*, 46 F.3d 325, 332 (3d Cir. 1995). Because the Court analyzed and found that Plaintiff demonstrated the elements of his ADA claim as a matter of law, the Court will only examine the additional elements under the Rehabilitation Act, that the plaintiff was discriminated against solely by reason of a disability and the program receives federal financial assistance.

The Court finds no dispute that Plaintiff was denied the benefit of participating in court proceedings solely by reason of his disability of a hearing impairment. As to the prong that the program or activity receives federal financial assistance, Plaintiff has shown that the City of Camden receives federal funds but proffered no evidence that the funds are apportioned to the CMC. The Court notes a split of authority over whether a local government can constitute a program or activity, such that all operations of a city are subject to the strictures of the Rehabilitation Act if the city accepts federal funds. *Compare Innovative Health Sys., Inc. v. City of White Plains*, 931 F. Supp. 222, 234 (S.D.N.Y. 1996), *aff'd in part on other grounds*, 117 F.3d 37 (2d Cir. 1997) (finding § 504 applied to a city's zoning board where the city received federal funding), *with Schroeder v. City of Chicago*, 927 F.2d 957, 962 (7th Cir. 1991) (holding that § 504 was not intended to sweep in the entire city if only two small departments received federal funding). This Court reads the plain language of § 504 to state that a program or activity includes all operations of the entity that receives federal financial assistance. *See* 29 U.S.C. § 794(b). Furthermore, Congress had previously amended § 504 to broaden the scope of what constitutes a program or activity. *See* 29 U.S.C. § 794(b); *Innovative Health Sys., Inc.*, 931 F. Supp. at 234. Accordingly, the Court finds that the CMC is a program or activity that receives federal funding, and Plaintiff has demonstrated a claim under § 504 of the Rehabilitation Act. Therefore, the Court grants summary judgment to Plaintiff as to liability.

### 2.    *Damages*

Defendants seek summary judgment on damages under the Rehabilitation Act. As with claims brought under the ADA, the Rehabilitation Act also requires a plaintiff seeking compensatory damages to show the discriminatory conduct was intentional. *D.E.*, 765 F.3d at 269. As discussed above, Plaintiff has shown that a reasonable trier of fact could find deliberate

indifference on the part of Defendants, and the Court thus denies Defendants' request for summary judgment on damages.

### C.    NJLAD

Plaintiff and Defendants both move for summary judgment on the NJLAD claim. The NJLAD provides protections to disabled persons analogous to the ADA's protections, N.J. Stat. Ann. § 10:5-4, and New Jersey courts apply the standards developed under the ADA when analyzing NJLAD claims, *Jones v. Aluminum Shapes*, 772 A.2d 34, 40–44 (N.J. Super. Ct. App. Div. 2001). Because the Court found that Plaintiff has demonstrated his claim under the ADA as a matter of law, the Court also grants Plaintiff summary judgment on the NJLAD claim.

### D.    Injunctive Relief

Plaintiff concedes that he cannot demonstrate a real and immediate threat of future harm, Pl.'s Opp'n to Def.'s MSJ 3, so the Court grants summary judgment for Defendants on the issue of injunctive relief.

## IV.    CONCLUSION

For the reasons expressed above, Defendants' Motion for Summary Judgment is **GRANTED IN PART** and Plaintiff's Motion for Partial Summary Judgment is **GRANTED**.


Dated:    12/19/2016                                    s/ Robert B. Kugler

                                                        ROBERT B. KUGLER

                                                        United State District Judge